1
2
3
4
5
6
7

8      UNITED STATES DISTRICT COURT
       WESTERN DISTRICT OF WASHINGTON
9                  AT TACOMA

10   SHAWN DONNELLY,

11              Plaintiff,                      CASE NO. C12-5650 KLS

12       v.                                     ORDER GRANTING
                                                DEFENDANT'S MOTION
13   INTERCITY TRANSIT, a municipal
     subdivision of the State of Washington,
14
                Defendant.
15

16

17        The Plaintiff filed a Motion for Partial Summary Judgment in which he requests this

18   court to rule, as a matter of law, that the Defendant violated the Americans With Disabilities Act,

19   42 U.S.C. §12101 *et. seq.* (ADA) and that the defendant is liable for all damages caused thereby.

20   ECF No. 13.  The Defendant, Intercity Transit, subsequently filed a Motion to Dismiss for failure

21   to state a claim under the Americans With Disabilities Act (ADA), 42 U.S.C. §12101 *et. seq.,*

22   pursuant to Fed. R. Civ. P. 12(b)(6).  ECF No. 17.  In particular, the Defendant asserts that the

23   Plaintiff does not have a private right of action to enforce the particular regulations relied upon

24   by the Plaintiff.

1    In his response, the Plaintiff asked this court to convert the Defendant's motion to a

2    summary judgment motion, which request the Defendant opposes.  The Court is granting the

3    request to convert the Defendant's motion into a summary judgment motion and will therefore

4    consider all the materials filed by both parties as they relate to the alleged violation of the

5    Americans With Disabilities Act.

6        For the reasons set forth below, the Court is granting the Defendant's motion to dismiss

7    Plaintiff's claims based on alleged violations of regulations promulgated to carry out the

8    mandates of the Americans With Disabilities Act.  In light of that ruling, the Court does not

9    address the issues raised by the Plaintiff in his motion for partial summary judgment

10                    FACTS RELATED TO ALLEGED REGULATORY VIOLATIONS

11       Mr. Donnelly has cerebal palsy, is wheel-chair bound and is a "qualified individual with a

12   disability" under the ADA.  42 U.S.C. § 12131(2).  The Defendant is in the business of providing

13   transportation, upon request, to individuals with disabilities and is subject to Title II of the ADA.

14       Mr. Donnelly utilizes the paratransit services of the Defendant and has done so for a

15   number of years.  He alleges that on November 1, 2007 he was injured while a passenger in Dial-

16   a-Lift van #284, owned and operated by the Defendant.  He asserts that the driver of the van

17   went over a speed bump "in such a manner that Mr. Donnelly flew up out of his wheelchair,

18   dropped back down into his chair and experienced an immediate headache, neck pain and back

19   pain."  ECF No. 13, p. 3.  For purposes of their motion, the Defendant does not contest Mr.

20   Donnelly's injury allegations.

21       Mr. Donnelly testified that when he was secured inside the van by the van driver that the

22   driver did not offer the Plaintiff the use of a shoulder harness, was not informed that the

23   Defendant was required to provide him with a shoulder harness and that he would have used it

24

1   had it been offered.  ECF No. 15, p. 2.  In addition, the Plaintiff initially alleged that there was no

2   shoulder harness installed in the van.

3        In his Motion for Summary Judgment, the Plaintiff alleged the Defendant violated four

4   CFRs as follows: (1) failure to provide a shoulder harness in violation of 49 CFR § 38.23(d)(7);

5   (2) failure to maintain a shoulder harness in an operative condition in violation of 49 CFR §

6   37.161(a); (3) failure to promptly repair a shoulder harness if damaged or out of order in

7   violation of 49 CFR § 37.161(b); and (4) failure to take reasonable steps to accommodate

8   individuals with disabilities who would otherwise use the shoulder harness (accessibility feature)

9   that is damaged or out of order in violation of 49 CFR § 37.161(b).  ECF No. 13, pp. 7 – 10.  In

10   his Reply (ECF No. 22), filed in support of his summary judgment motion, the Plaintiff also

11   alleged a fifth violation, (5) the failure to provide a shoulder harness, which is in itself, a

12   violation of 49 CFR § 37.77, which requires that any new vehicle purchased after August 25,

13   1990 be readily accessible to and usable by individuals with disabilities, including individuals

14   who use wheelchairs.  ECF No. 22, p. 3.

15        In his Response to Defendant's motion to dismiss (ECF No. 24), the Plaintiff asserted a

16   violation of two additional CFRs:  (6) securement system for a wheelchair shall limit the

17   movement of an occupied wheelchair to no more than 2 inches in any direction in normal

18   conditions in violation of 49 CFR § 38.23(d)(5); and (7) failure to properly train personnel in

19   violation of 37 CFR § 37.173.  ECF No. 24, p. 5.

20        In response to the Plaintiff's motion for summary judgment, the Defendant provided

21   conclusive proof that a shoulder harness was provided in the van in question, that the shoulder

22   harness came installed in the van when the vehicle was ordered, and that there were no

23   maintenance issues related to the shoulder harness.   In light of the fact that the defendant

24   purchased the van with a shoulder harness installed and that there were no maintenance problems

1 with the harness, violations identified above as (2) through (4) have not been violated by the

2 Defendant.

3       The Plaintiff did not present any evidence to support his assertion the Defendant violated

4 49 CFR § 38.23(d)(5) or 37 CFR § 37.173.  No evidence was presented to the Court regarding

5 movement of the wheelchair itself beyond the 2 inches permitted by the regulation and no

6 evidence was presented regarding a failure to train the van driver.  Due to the lack of evidence,

7 there has been no showing by the Plaintiff that the Defendant violated these two regulations.

8       In light of the fact that the motion is now a summary judgment, and based on the

9 pleadings filed by the parties, there remain two regulatory violations alleged by the Plaintiff for

10 consideration by this Court.

11 ALLEGED REGULATORY VIOLATIONS

12       The first allegation pertains to the provision of a shoulder harness as required by 49 CFR

13 § 38.23 (d)(7) which provides as follows:

14       *Seat belt and shoulder harness.*  For each wheelchair or mobility aid

15       securement device provided, a passenger seat belt and shoulder harness,
complying with all applicable provisions of part 571 of this title, shall

16       also be provided for use by wheelchair or mobility aid users.  Such seat
belts and shoulder harnesses shall not be used in lieu of a device which

17       secures the wheelchair or mobility aid itself.

18 In particular, the Plaintiff asserts that "provided for use" means that the Defendant was required

19 to actually provide the shoulder harness to him, the wheelchair user.  So, rather than just have a

20 van that contains a shoulder harness that is available for use, the shoulder harness must be

21 specifically offered to the wheelchair user and the passenger can then decide whether he or she

22 wishes to use it or not.

23       Regarding the second alleged regulatory violation, the plaintiff asserts that the failure to

24 offer or provide him a shoulder harness on the date of the incident was also a violation of 49

1    CFR § 37.77(a), which requires a public entity "operating a demand responsive system for the

2    general public making a solicitation after August 25, 1990, to purchase or lease a new buy or

3    other new vehicle for use on the system, shall ensure that the vehicle is readily accessible to and

4    useable by individuals with disabilities, including individuals who use wheelchairs."  It is

5    undisputed that the Defendant operates a demand responsive system and that this regulation

6    applies to it.

7                              AMERICANS WITH DISABILITIES ACT

8            Title II of the ADA prohibits discrimination in access to public services by requiring that

9    "no qualified individual with a disability shall, by reason of such disability, be excluded from

10   participation in or be denied the benefits of the services, programs, or activities of a public entity,

11   or be subjected to discrimination by any such entity."  42 U.S.C. § 12132.  "This prohibition

12   against discrimination is universally understood as a requirement to provide "meaningful

13   access." *Lonberg v. City of Riverside,* 571 F.3d 846, 851 (9th Cir. 2009).

14           42 U.S.C. § 12143, which is applicable to the Defendant, identifies certain practices by

15   public-transportation providers that are considered discriminatory:

16       **(a)  General rule**

17               It shall be considered discrimination for purposes of section 12132 of this title
         and section 794 of Title 29 for a public entity which operates a fixed route system . . .
18       to fail to provide with respect to the operations of its fixed route system, in accordance
         with this section, paratransit and other special transportation services to individuals
19       with disabilities, including individuals who use wheelchairs, that are sufficient to
         provide to such individuals a level of service (1) which is comparable to the level
20       of designated public transportation services provided to individuals without
         disabilities using such system; or (2) in the case of response time, which is
21       comparable, to the extent practicable, to the level of designated public transportation
         services provided to individuals without disabilities using such system.

22
     The purpose of this statute is to require the provision of an appropriate level of service either (1)

23   as compared to individuals without disabilities using the system or (2) with regard to the

24

1   response time for individuals with disabilities as compared to individuals without disabilities

2   using such system.   Pursuant to the statute, a failure to provide the necessary level of service, in

3   either category, constitutes discrimination and a violation of the ADA.  Mr. Donnelly does not

4   allege that the Defendant failed to provide the level of service as defined and required by this

5   statute.

6        The Secretary of the Department of Transportation was given the responsibility to issue

7   final regulations to carry out this section.  42 U.S.C. § 12143 (b).   The purpose of Part 37 of 49

8   C.F.R. is to "implement the transportation and related provisions of Titles II and III of the

9   Americans with Disabilities Act of 1990."  49 C.F.R. § 37.1.

10       The purpose of 49 CFR § 38 is to provide "minimum guidelines and requirements for

11  accessibility standards in part 37 of this title for transportation vehicles required to be accessible

12  by the Americans With Disabilities Act (ADA) of 1990."  49 CFR § 38.1.  By this language, the

13  purpose of the regulations contained in Part 38 is to specify what must be included in the various

14  buses, vans and systems in order for them to be considered accessible.  For example, the

15  regulations in Subpart B (49 CFR § 38.21 – 39.39) include numerous requirements relating to

16  lifts, handrails, ramps and securement devices; doors, steps and thresholds; priority seating signs;

17  interior circulation, handrails and stanchions; lighting; fare box; a public information system; and

18  stop request.

19       The Plaintiff also asserts the Defendant violated 42 U.S.C. § 12144.  This statute

20  prohibits a public entity, such as the Defendant, who operates a demand responsive system, to

21       purchase or lease a new vehicle for use on such system, for which a solicitation
         is made after the 30th day following July 26, 1990, that is not readily accessible

22       to and usable by individuals with disabilities, including individuals who use
         wheelchairs, unless such system, when viewed in its entirety, provides a level

23       of service to such individuals equivalent to the level of service such system
         provides to individuals without disabilities.

24

1  As the Defendant points out, however, this statute describes what must be contained in a vehicle

2  the Defendant wishes to purchase or lease, **at** the time of purchase or lease.  The van purchased

3  by the Defendant met this regulatory requirement as it had the necessary securement devices

4  installed on it when the Defendant purchased it.  The Defendant did not violate this regulatory

5  requirement under the facts of this case.

6                                    SUMMARY JUDGMENT STANDARD

7           Summary judgment is proper where "the pleadings, depositions, answers to

8  interrogatories, and admissions on file, together with the affidavits, if any, show that there is no

9  genuine issue as to any material fact and that the moving party is entitled to judgment as a matter

10  of law."  Fed. R. Civ. P. 56(c); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247, 106 S. Ct.

11  2505, 91 L.Ed.2d 202 (1986).  The Court must draw all reasonable inferences in favor of the

12  non-moving party.  *See F.D.I.C. v. O'Melveny & Meyers,* 969 F.2d 744, 747 (9th Cir. 1992) *rev'd*

13  *on other grounds,* 512 U.S. 79 (1994).  The moving party has the burden of demonstrating the

14  absence of a genuine issue of material fact for trial.  *See Anderson,* 477 U.S. at 257.  Mere

15  disagreement, or the bald assertion that a genuine issue of material fact exists, no longer

16  precludes the use of summary judgment.  *See California Architectural Bldg. Prods., Inc. v*

17  *Franciscan Ceramics, Inc.,* 818 F.2d 1466, 1468 (9th Cir. 1987).

18          Genuine factual issues are those for which the evidence is such that "a reasonable jury

19  could return a verdict for the non-moving party."  *See Anderson,* 477 U.S. at 248.  Material facts

20  are those which might affect the outcome of the suit under governing law.  *Id.*  In ruling on

21  summary judgment, a court does not weigh evidence to determine the truth of the matter, but

22  "only determine[s] whether there is a genuine issue for trial."  *Crane v. Conoco, Inc.,* 41 F.3d

23  547, 549 (9th Cir. 1994)(citing *O'Melveny & Meyers,* 969 F.2d at 747).  Furthermore, conclusory

24  or speculative testimony is insufficient to raise a genuine issue of fact to defeat summary

1    judgment. *Anheuser-Busch, Inc. v. Natural Beverage Distributors,* 60 F.3d 337, 345 (9th Cir.

2    1995).  Similarly, hearsay evidence may not be considered in deciding whether material facts are

3    at issue in summary judgment motions.  *Id.* at 345; *Blair Foods, Inc. v. Ranchers Cotton Oil,* 610

4    F.2d 665, 667 (9th Cir. 1980).

5                                    PRIVATE CAUSE OF ACTION

6          "[P]rivate rights of action to enforce federal law must be created by Congress."

7    *Alexander v. Sandoval,* 532 U.S. 275, 286, 121 S. Ct. 1511, 149 L.Ed.2d 517 (2001) *citing*

8    *Touche Ross & Co. v. Redington,* 442 U.S. 560, 578, 99 S. Ct. 2479, 61 L.Ed.2d 82 (1979).  "The

9    judicial task is to interpret the statute Congress has passed to determine whether it displays an

10   intent to create not just a private right but also a private remedy.  *Transamerica Mortgage*

11   *Advisors, Inc. v. Lewis,* 444 U.S. 11, 15, 100 S. Ct. 242, 61 L.Ed.2d 146 (1979).  Statutory intent

12   on this latter point is determinative.  (citations omitted)  Without it, a cause of action does not

13   exist and courts may not create one, no matter how desirable that might be as a policy matter, or

14   how compatible with the statute."  *Id. at pp. 286-287.*

15         "Language in a regulation may invoke a private right of action that Congress through

16   statutory text created, but it may not create a right that Congress has not."  *Alexander* at p. 291.

17   The Court "must examine a challenged regulation in the context of the statute it is meant to

18   implement.  Only those regulations effectuating the statute's clear prohibitions or requirements

19   are enforceable through the statute's private right of action; regulations that do not encapsulate

20   the statutory right and corresponding remedy are not privately enforceable."  *Lonberg v. City of*

21   *Riverside,* 571 F.3d 846, 850-851 (9th Cir. 2009).

22         42 U.S.C. §12132 is enforceable through a private right of action.  *Id.* at p. 851.  Further,

23   the Defendant agrees that 42 U.S.C. § 12143(a) is also enforceable through a private right of

24   action.

1    In light of the findings above, the only remaining issue before the Court is whether 49

2  CFR § 38.23 (d)(7) is enforceable through a private right of action.

3    The purpose of 42 U.S.C. § 12143(a) is to ensure provision of an appropriate level of

4  service to individuals with disabilities.  The appropriate level of service is statutorily determined

5  either (1) as compared to individuals without disabilities using the system or (2) with regard to

6  the response time for individuals with disabilities as compared to individuals without disabilities

7  using such system.   Pursuant to the statute, a failure to provide the necessary level of service is

8  discrimination in violation of the ADA.

9    The regulation at issue in this case requires the defendant to provide a shoulder harness

10  for use by wheelchair users.  This requirement has nothing to do with whether the Defendant

11  provides an appropriate level of service as defined by the 42 U.S.C. §12143(a) and this is true

12  regardless of how one defines the word "provide."  Whether or not a shoulder harness is included

13  in a van or is "provided" is not a factor in determining whether the level of service provided to

14  individuals with disabilities is comparable to the level of service provided to individuals without

15  disabilities nor is it in anyway related to determining response time.

16    The undersigned concludes that 49 CFR § 38.23 (d)(7) is not enforceable through a 42

17  U.S.C. §12132(a) private right of action because the obligation it imposes is nowhere to be found

18  in the plain language of 42 U.S.C. §12132(a).  Moreover, requiring the provision of a shoulder

19  harness, as defined by the plaintiff, does nothing to ensure an appropriate level of service as

20  required under 42 U.S.C. §12132(a) nor does it remedy a denial of "meaningful access" under 42

21  U.S.C. §12132(a).

22    In summary, the Defendant's motion to dismiss, which was converted to a summary

23  judgment motion, is GRANTED as either the Plaintiff has failed to show a violation of a

24  regulation or the Plaintiff does not have a private right of action to enforce the regulation.

SHOW CAUSE REGARDING REMAINING STATE LAW CLAIMS

Under 28 U.S.C. § 1367, a federal court may assume supplemental jurisdiction over all other claims that are so related to claims in the action within the original jurisdiction so that they form part of the same case or controversy.  The Court may decline to exercise this supplemental jurisdiction if (1) the claim raises a novel or complex issue of state law, (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction, (3) the district court has dismissed all claims over which it has original jurisdiction, or (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction. 28 U.S.C. § 1367(c).

In this case, all of the federal claims have been dismissed.  The remaining claims raise issues of state law, in particular, whether the Defendant's negligence cause injury to the Plaintiff. There do not appear to be exceptional circumstances warranting this court to assume supplemental jurisdiction over the state law claims.  Accordingly, the parties should be ordered to show cause why this court should not decline to exercise supplemental jurisdiction over the state law claims in this case.

Therefore, not later than December 7, 2012, the parties are **ORDERED TO SHOW CAUSE**, if any they have, why the court should not decline to exercise supplemental jurisdiction over the pending state law claims.  Not later than December 12, 2012, any party may file a reply to a response.  The matter is noted for consideration on the court's December 14, 2012 calendar. The parties are notified that, if they fail to timely respond to this Order to Show Cause, or if they otherwise fail to show cause as directed herein, the court will remand the case to Thurston County Superior Court.

CONCLUSION

(1)  The Defendant's motion to dismiss the Plaintiff's federal claims is GRANTED.

1      (2) The parties are ordered to show cause why this matter should not be remanded to

2  Thurston County Superior Court and this issue is noted for the Court's December 14, 2012

3  calendar.

4      Dated this 15th day of November, 2012.

5

6

7  Karen L. Strombom
   United States Magistrate Judge

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24